UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANUBHAV SHARMA, et al.,

Plaintiffs,

v.

UBER TECHNOLOGIES INC, et al.,

Defendants.

Case No. 26-cv-02728-NW

**ORDER DENYING MOTION TO COMPEL ARBITRATION AND TO STAY ACTION**

Re: ECF No. 23

United States District Court
Northern District of California

Plaintiff Anubhav Sharma was injured while riding as a passenger in a rideshare vehicle that was driven onto train tracks and hit by a train in Sunnyvale, California. The vehicle was operated by a driver who used Defendant Uber Technologies Inc.'s ("Uber") Uber app to provide Sharma with a rideshare service. Sharma contends that he requested the ride through his employer-sponsored Uber account, and that he "was traveling at the direction of his employer[,] Amazon, solely for a commercial purpose on his employer's behalf." ECF No. 1 ("Compl.") ¶ 2. Sharma and his wife, Maria Ashraf ("Plaintiffs"), assert claims against Uber for negligence and common carrier liability under California Civil Code section 2100, and against the train operator, Santa Clara Valley Transportation Authority (the "VTA"), for negligence and dangerous condition of public property. Ashraf also brings a claim for loss of consortium against both Defendants.

Now before the Court is Uber's motion to compel arbitration of Plaintiffs' claims against it and stay the action until completion of the arbitration proceedings. ECF No. 23 ("Mot."). Uber's motion is fully briefed, and the Court held a hearing on November 13, 2026. ECF Nos. 25 ("Opp."), 26 ("Reply").[1] For the reasons that follow, the Court DENIES Uber's motion to compel

[1] Both Uber and Plaintiffs objected to evidence in the opposing party's declaration. Reply at 5–7 (Uber's objections to Plaintiffs' opposition evidence); ECF No. 27 (Plaintiffs' objection to

arbitration, and DENIES as moot Uber's request to stay the case pending arbitration.

## I. BACKGROUND[2]

On December 9, 2025, Plaintiff Sharma booked an Uber rideshare through his "Amazon Travel" Uber account. Compl. ¶ 2. Plaintiffs allege Sharma took the ride "at the direction of his employer[,] Amazon, solely for a commercial purpose on his employer's behalf." *Id.* Plaintiffs further allege that "Uber processed the trip as a business ride for Amazon and held the trip out as an Uber-provided commercial service," and that "Sharma did not directly contract with Uber for personal use in connection with this trip." *Id.*

During the ride, Sharma's rideshare driver stopped on the train tracks at the railroad crossing at Innovation Way and N. Mathilda Avenue in Sunnyvale. Plaintiffs contend that because the "signals and other markings at the intersection were not working properly," and because signage and equipment obstructed the rideshare driver's view, the driver was unaware that a train was approaching. *Id.* The crossing arms then descended, trapping the car on the tracks. Intending to move the car away from the tracks, the driver pulled forward into the path of the oncoming train. The train operator slowed the train, but was unable to avoid a collision with the vehicle. As a result of the collision, "Plaintiff Sharma sustained serious injuries and his wife Plaintiff Ashraf," though she was not in the car during the collision, "suffered loss of consortium." *Id.*

On March 27, 2026, Plaintiffs initiated this lawsuit against Uber and the VTA, alleging negligence as to both Defendants, common carrier liability under California Civil Code section 2100 against Uber, and dangerous condition of public property against the VTA. *See* Compl.

---

Defendant's reply evidence). Because the Court does not rely on the contested evidence for the purposes of this Order, all objections are DENIED as moot, without prejudice to either side presenting evidence or objections in this case in the future. After the hearing, on November 19, 2026, Plaintiffs moved for leave to file a supplemental declaration and exhibit in opposition to Defendants' motion to compel arbitration. ECF No. 30. Because the Court does not rely on the proposed supplemental declaration or exhibit for the purposes of this Order, the motion is DENIED as moot without prejudice to Plaintiffs presenting the proposed evidence in this case in the future.

[2] The facts are taken from Plaintiffs' complaint unless otherwise noted. *See* Compl.



United States District Court
Northern District of California

Sharma's wife, Ashraf, also brings a claim for loss of consortium against both Defendants. *Id.*

On August 20, 2026, Uber moved to compel arbitration of both Plaintiffs' claims against it. Uber argues that when creating their respective Uber accounts through the Uber app, both Sharma and Ashraf agreed to binding arbitration of claims arising out of their use of Uber's services. Mot. at 14–18. Uber further argues that Ashraf is equitably estopped from litigating her loss of consortium claim, and must instead proceed in arbitration, because her claim arises from Sharma's relationship with Uber. *Id.* at 19–22.

Uber's witness states that before accessing Uber's platforms, including the Uber app, a user must register for an Uber account and consent to Uber's Terms of Use. Declaration of Jacqueline Pare in Support of Defendant Uber Technologies, Inc.'s Motion to Compel Arbitration and to Stay Action ("Pare Decl."), ECF No. 23-2 ¶ 5. According to Uber, one Uber account can be used to access all of Uber's platforms, and the Terms of Use required for account creation apply to all of Uber's platforms. *Id.*

Sharma created an Uber account and assented to Uber's Terms of Use on November 2, 2014. *Id.* ¶ 8. The parties agree that Sharma most recently assented to Uber's updated Terms of Use, including its arbitration provision, on April 5, 2023 (the "2023 Terms").[3] *See* Mot. at 15–16; Opp. at 5, 9 (agreeing that on April 5, 2023, Sharma "accepted Uber's Terms and Conditions, which included an arbitration provision . . . ," and that "[t]he 2023 Terms govern Mr. Sharma's personal, noncommercial use of Uber"). The arbitration clause in the 2023 Terms states, in relevant part:

> **2. Arbitration Agreement**
>
> By agreeing to these Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration as set forth in this Arbitration Agreement, and

[3] Plaintiffs argue that whether Ashraf agreed to Uber's 2023 Terms for the use of her *own* account is irrelevant. Opp. at 13–14. The Court agrees. The 2023 Terms expressly "govern[] *your* use of Uber's [services]." Pare Decl., Ex. G at 81 (emphasis added). Ashraf's claims in this case arise from *Sharma's* use of Uber's services—the December 9, 2025 Uber ride that injured Sharma, for which Ashraf was not present—rather than her *own* use of Uber's services. Compl. ¶¶ 49, 53, 62; Opp. at 6. Thus, the relevant inquiry for both Plaintiffs is whether their claims against Uber must be arbitrated pursuant to Plaintiff Sharma's agreement to the 2023 Terms.

> not as a class, collective, coordinated, consolidated, mass and/or representative action. You and Uber are each waiving your right to a trial by jury. . . .
>
> (1) Covered Disputes: Except as expressly provided below in Section 2(b), you and Uber agree that any dispute, claim, or controversy in any way arising out of or relating to (i) these Terms and prior versions of these Terms, or the existence, breach, termination, enforcement, interpretation, scope, waiver, or validity thereof; (ii) your access to or use of the Services at any time; (iii) incidents or accidents resulting in personal injury to you or anyone else that you allege occurred in connection with your use of the Services (including, but not limited to, your use of the Uber Marketplace Platform or the driver version of the Uber App), regardless whether the dispute, claim, or controversy occurred or accrued before or after the date you agreed to these Terms, and regardless whether you allege that the personal injury was experienced by you or anyone else; and (iv) your relationship with Uber, will be settled by binding individual arbitration between you and Uber, and not in a court of law. This Arbitration Agreement survives after your relationship with Uber ends. . . .
>
> (4) Delegation Clause: Only an arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement, including without limitation any claim that all or any part of this Arbitration Agreement is void or voidable. An arbitrator shall also have exclusive authority to resolve all threshold arbitrability issues, including issues relating to whether these Terms are applicable, unconscionable, or illusory and any defense to arbitration, including without limitation waiver, delay, laches, or estoppel.
>
> (5) Application to Third Parties: This Arbitration Agreement shall be binding upon, and shall include any claims brought by or against any third parties, including but not limited to your spouses, heirs, third-party beneficiaries and assigns, where their underlying claims arise out of or relate to your use of the Services. To the extent that any third-party beneficiary to this agreement brings claims against the Parties, those claims shall also be subject to this Arbitration Agreement.

Pare Decl. ¶ 17 & Ex. G at 82–87.

Plaintiffs contend, however, that the 2023 Terms govern only disputes arising from Sharma's "personal, non-commercial use" of Uber's services, and not his "business use of Amazon-exclusive Uber," which was "separately negotiated" between Uber and Amazon. Opp. at 7. In support of this reading, Plaintiffs cite Section 3 of the 2023 Terms, entitled "The Services," which states in part, "Unless otherwise agreed by Uber in a separate written agreement with you,

these Services are made available solely for your personal, noncommercial use." Pare Decl. ¶ 17 & Ex. G at 92. As Sharma requested the ride in which he was injured through his "Amazon-exclusive Uber" for his "business" or "commercial" use rather than his "personal, noncommercial" use, Plaintiffs state that Uber has not met its burden to establish that the 2023 Terms apply to the present dispute arising from that ride. Opp. at 7–9.

## II. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA), agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting 9 U.S.C. § 2). Like all valid contracts, agreements to arbitrate must be "enforce[d] according to their terms." *Id.* Accordingly, "district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 938 (9th Cir. 2013) (citation and quotation marks omitted).

When ruling on a motion to compel arbitration, "a court's role is limited to determining 'two "gateway" issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute.'" *Wanless v. Peloton Interactive, Inc.*, No. 2:23-CV-00405-DMC, 2023 WL 4086455, at *4 (E.D. Cal. June 20, 2023) (quoting *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)). But these gateway issues may be delegated to an arbitrator, so long as "the parties *clearly and unmistakably*" agreed to do so. *Brennan*, 796 F.3d at 1130 (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)) (emphasis original); *see Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011) ("[T]he Supreme Court has cautioned that '[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is "clear and unmistakable" evidence that they did so.'") (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 939 (1995)). Evidence that the parties "clearly and unmistakably" delegated gateway issues of arbitrability to an arbitrator includes "an express agreement to do so," or "a course of conduct demonstrating assent." *Momot*, 652 F.3d at 988.

United States District Court
Northern District of California

**III. DISCUSSION**

Here, the parties disagree as to the first gateway issue: whether the parties agreed in the first place to arbitrate Plaintiffs' claims in this case that arise out of Sharma's use of Uber's services for business travel through his Amazon-sponsored business Uber account. Plaintiffs argue that the 2023 Terms do not apply to claims arising from the trip during which Sharma was injured, because the 2023 Terms state that Uber's services under that contract "are made available *solely* for [the user's] personal, noncommercial use." Pare Decl. ¶ 17 & Ex. G at 92 (emphasis added). Plaintiffs interpret this to mean that rides booked through Sharma's Amazon-sponsored business account, for the purpose of business travel for Amazon, are *not* "personal, noncommercial use[s]" of Uber's services. Opp. at 7–9. Thus, Plaintiffs contend that evidence of Sharma's assent to the 2023 Terms (that govern his "personal, *non*commercial use" of Uber) is insufficient to establish that Sharma agreed to arbitrate claims arising from his use of Uber's services for business—or "commercial"—purposes. *Id.* at 9 (emphasis added). To establish arbitrability of Plaintiffs' claims, Plaintiffs argue that "Uber would have had to provide an arbitration agreement which governs this separately negotiated, independent transaction [*i.e.*, Sharma's Amazon-sponsored business account]," and provide evidence that Sharma consented to arbitrate claims arising from his business or commercial use of Uber's services. *Id.*

Uber counters that "[an Uber] user is not required to consent to separate or different Terms of Use when adding or using a business profile [to their Uber account]." Reply at 15. Uber's witness affirms that "[t]here are no separate Terms of Use when riders link their business account to their personal account." Pare Decl. ¶ 18. Uber does not dispute the existence of a separate agreement between Uber and Amazon for the provision of exclusive services for Amazon's employees' business use. Instead, Uber argues that the issue is whether the Amazon-exclusive rides fall within the scope of the 2023 Terms, and those 2023 Terms delegate questions of scope to the arbitrator. According to Uber, Plaintiffs' claims fall within the scope of the 2023 Terms because "personal, noncommercial use," in context, can only be read to mean that "the outlined services are for the specific user only, and limits the user from exploiting, redistributing, or providing access to those Services for their own commercial gain, such as selling access to their

Uber account to third parties." Reply at 14. Uber argues that this reading shows that an Amazon-exclusive ride—called for the specific user (Sharma), and not called for the user's *individual* commercial gain, as here—is a "personal, noncommercial use" of Uber's services. *Id.* at 12–15.

Uber has not presented "clear and unmistakable" evidence that the parties expressly agreed to delegate gateway questions of arbitrability to an arbitrator *for the 2025 ride at issue*—a question the Court must resolve before determining the scope of the parties' agreement to arbitrate. *See Perez v. Discover Bank*, 74 F.4th 1003, 1011 (9th Cir. 2023); *see also Smorowski v. Domino's Pizza LLC*, CV 20-10739-MWF, 2021 WL 4440167, at *4 (C.D. Cal. July 23, 2021) ("[*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019)] did not address [whether] the contract in which the arbitration provision appeared . . . was '[t]he relevant contract between the parties' and generally governed the subject matter of the parties' dispute."). While the 2023 Terms, to which Uber and Sharma mutually assented, contain an express delegation clause, it is unclear whether the 2023 Terms apply to the specific service at issue: the "Amazon-exclusive" Uber services that are made available solely to Amazon employees, like Sharma, for use in connection with their employment. Indeed, at the hearing, counsel for Plaintiffs confirmed that there is a *separate* contract between Uber and Amazon governing the Amazon-exclusive Uber service that Sharma was using when he was injured in December 2025.

Although Uber does not dispute that a separate agreement between Uber and Amazon exists for Amazon-exclusive rides, Uber nevertheless insists that the 2023 Terms apply to *every* use of the Uber platform by Sharma, and that Plaintiffs misconstrue the term "personal, noncommercial use." Reply at 7–10, 12–15; Pare Decl. ¶ 17 & Ex. G at 92. In briefing its motion to compel arbitration, Uber could have referenced the Uber-Amazon agreement to show that the Amazon-exclusive ride in which Sharma was injured is *not* governed by the Uber-Amazon agreement, but instead by the 2023 Terms. For example, if the Uber-Amazon agreement incorporates Uber's terms of use or its arbitration agreement, it would be clear (at least as to Amazon, and possibly as to its employees) that the parties intended the arbitration provision of Uber's terms to apply to Amazon-sponsored rides called by Amazon employees with preexisting Uber accounts, and the Court would not need to interpret whether the generic term "personal,

noncommercial use," as it applies to Amazon-sponsored rides, should be read the way Uber suggests. But Uber did not do so. And without the separate agreement in the record, and with only competing interpretations of the phrase "personal, noncommercial use," there is no "clear and unmistakable evidence"—either an express agreement or a "course of conduct demonstrating assent"—for the Court to consider in evaluating whether the parties agreed to delegate threshold questions of arbitrability to the arbitrator with respect to Amazon-exclusive rides. *Momot*, 652 F.3d at 988.

Accordingly, the Court finds that Uber has not met its burden to establish that the parties clearly and unmistakably agreed to delegate threshold questions of arbitrability to an arbitrator with respect to the Amazon-exclusive services. The Court therefore DENIES Uber's motion to compel arbitration, and DENIES Uber's request to stay the action pending completion of arbitration proceedings.

## IV. CONCLUSION

Uber's motion to compel arbitration is DENIED. The Court maintains all previously set dates and deadlines in this case.

**IT IS SO ORDERED.**

Dated: November 25, 2026

Noël Wise
United States District Judge